**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | | |
|---|---|---|
| DUSTIN TAPPAN,<br><br>Plaintiff,<br>v.<br><br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>&<br><br>EQUIFAX INFORMATION SERVICES, LLC<br><br>&<br><br>TRANS UNION, LLC<br>Defendants. | ) | **COMPLAINT**<br><br><br><br>Case No: 1:26-cv-2961<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiff Dustin Tappan, by and through the undersigned counsel, and for his Complaint against Defendants Experian Information Solutions, Inc. ("EXP"), Equifax Information Services, LLC ("EQ"), and Trans Union, LLC ("TU") (and together collectively, "Defendants") for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

**JURISDICTION**

1. This court has jurisdiction of the federal claim under 15 U.S.C. § 1681(p).

2. Venue is proper because EXP is headquartered in Cuyahoga County, Ohio, the acts and transactions occurred here, and EXP, EQ, and TU transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside

in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Las Vegas, a part of Clark County, Nevada 89129.

6. The acts that occurred giving rise to this complaint occurred while Defendant was headquartered in Ohio, making the Northern District of Ohio a proper venue under 28 U.S. Code § 1391(b)(2).

## STANDING

7. Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

8. Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, INC. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

9. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

10. Plaintiff, Dustin Tappan (hereafter "Plaintiff"), is a natural person currently residing in Clark County, in the state of Nevada.

11. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

12. Bridgecrest Credit ("BC"), is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 7300 E. Hampton Ave., Mesa, AZ 43017.

13. American Express Company ("AEC"), is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 200 Vessey Street, World Financial Center, New York, NY 10285.

14. BMW Financial Services ("BMW"), is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address 5515 Park Center Circle, Dublin, OH 43017.

15. Mercedes Benz Financial ("MBF"), is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 36455 Corporate Dr., Farmington Hills, MI 48331.

16. Kia Finance America ("KFA"), is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 4000 Macarthur Blvd., Ste, Newport Beach, CA 92660.

17. JP Morgan Chase Bank ("JPMCB"), is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at PO Box 6497, Sioux Falls, SD 57117.

18. Brinks Home ("BH"), is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at PO Box 815665, Dallas, TX 75381.

19. Uplift is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 440 North Wolfe Road, Sunnyvale, CA 94085.

20. Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

21. Defendant EQ is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

22. Defendant TU is a corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

23. BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift, are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

24. EXP, EQ, and TU are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(f)). EXP, EQ, and TU regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

**FACTUAL ALLEGATIONS**

25. Plaintiff is a consumer who is the victim of inaccurate reporting by BC, AEC, BMW, MBF, KFA, JPMCB, BH, Uplift, EXP, EQ, and TU.

26. CRAs, including EXP, EQ, and TU have a duty under the FCRA to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. §1681(e)(B).

27. Further, both CRAs and Furnishers have a duty to conduct reasonable investigations when notified of disputed information found in a consumer credit report.

28. Here, Plaintiff is a victim of inaccurate reporting regarding alleged accounts with BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift, inaccuracies found in credit reports published by the CRA Defendants.

29. The following is a description of the inaccuracies and failures of all Defendants to investigate and update their reporting of the accounts in question.

30. In September 2025, Plaintiff discovered that the accounts he had with BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift that were reporting on his credit file were being reported in error.

31. The BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift accounts harmed the Plaintiff because each account does not accurately depict Plaintiff's credit history and creditworthiness.

32. That BC was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

33. That BC was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

34. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with BC as disputed.

35. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

36. Plaintiff disputed the account, asserting all payments were made on time and the reported delinquent status is inaccurate.

37. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case BC.

38. EXP, EQ, and TU received the letters sent by Plaintiff.

39. EXP, EQ, and TU transmitted notice of these disputes to BC via an Automated Credit Dispute Verification form ("ACDV").

40. BC was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

41. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to BC after receiving notice of the disputes from Plaintiff.

42. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to BC after receiving notice of the disputes from Plaintiff.

43. After receiving this notice, in any subsequent voluntary reporting, BC must then include the dispute notation on said account.

44. Defendant BC re-reported the account to EXP on 03/08/23 and 10/31/25.

45. Defendant BC re-reported the account to TU on 03/13/23 and 10/31/25.

46. Defendant BC re-reported the account to EQ on 09/01/25.

47. On or about 11/10/25, Plaintiff received an updated credit file from EXP.

48. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to BC.

49. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify BC.

50. EXP failed to properly reinvestigate Plaintiff's dispute.

51. As a result of EXP's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

52. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

53. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

54. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

55. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

56. On or about 11/10/25, Plaintiff received an updated credit file from EQ.

57. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to BC.

58. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify BC.

59. EQ failed to properly reinvestigate Plaintiff's dispute.

60. As a result of EQ's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

61. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

62. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

63. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

64. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

65. On or about 11/10/25, Plaintiff received an updated credit file from TU.

66. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to BC.

67. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify BC.

68. TU failed to properly reinvestigate Plaintiff's dispute.

69. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

70. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

71. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

72. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

73. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

74. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

75. The updated 11/10/25 credit report contained inaccurate information.

76. BC failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

77. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

78. BC must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

79. That BC furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

80. That BC failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by EXP, EQ, and TU.

81. In the alternative, if BC properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

82. That BC never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

83. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from BC in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

84. That AEC was reporting the account on Plaintiff's credit report with EXP and TU.

85. That AEC was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

86. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to EXP and TU notifying the account with AEC as disputed.

87. These letters provided notice of the inaccurate reporting to EXP and TU.

88. Plaintiff disputed the late payment reporting, asserting the account was never late and all payments were made on time.

89. Once EXP and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case AEC.

90. EXP and TU received the letters sent by Plaintiff.

91. EXP and TU transmitted notice of these disputes to AEC via an Automated Credit Dispute Verification form ("ACDV").

92. AEC was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

93. Alternatively, EXP and TU negligently failed to send notice of the disputes to AEC after receiving notice of the disputes from Plaintiff.

94. Alternatively, EXP and TU willfully failed to send notice of the disputes to AEC after receiving notice of the disputes from Plaintiff.

95. After receiving this notice, in any subsequent voluntary reporting, AEC must then include the dispute notation on said account.

96. Defendant AEC re-reported the account to EXP and TU on 10/10/25.

97. On or about 11/10/25, Plaintiff received an updated credit file from EXP.

98. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to AEC.

99. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify AEC.

100. EXP failed to properly reinvestigate Plaintiff's dispute.

101. As a result of EXP's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

102. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

103. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

104. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

105. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

106. On or about 11/10/25, Plaintiff received an updated credit file from TU.

107. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to AEC.

108. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify AEC.

109. TU failed to properly reinvestigate Plaintiff's dispute.

110. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

111. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

112. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

113. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

114. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

115. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

116. The updated 11/10/25 credit report contained inaccurate information.

117. AEC failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

118. EXP and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

119. AEC must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and TU.

120. That AEC furnished information to EXP and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and TU of the disputes.

121. That AEC failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by EXP and TU.

122. In the alternative, if AEC properly updated the account information and marked the account as disputed with EXP and TU after receiving notification of disputes from Plaintiff, then EXP and TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

123. That AEC never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and TU.

124. Alternatively, EXP and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from AEC in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

125. That BMW was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

126. That BMW was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

127. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with BMW as disputed.

128. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

129. Plaintiff disputed the account, asserting it was fully paid with all payments made on time and should not reflect late payments.

130. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case BMW.

131. EXP, EQ, and TU received the letters sent by Plaintiff.

132. EXP, EQ, and TU transmitted notice of these disputes to BMW via an Automated Credit Dispute Verification form ("ACDV").

133. BMW was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

134. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to BMW after receiving notice of the disputes from Plaintiff.

135. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to BMW after receiving notice of the disputes from Plaintiff.

136. After receiving this notice, in any subsequent voluntary reporting, BMW must then include the dispute notation on said account.

137. Defendant BMW re-reported the account to EXP and TU on 10/18/25.

138. Defendant BMW re-reported the account to EQ on 10/01/25.

139. On or about 11/10/25, Plaintiff received an updated credit file from EXP.

140. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to BMW.

141. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify BMW.

142. EXP failed to properly reinvestigate Plaintiff's dispute.

143. As a result of EXP's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

144. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

145. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

146. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

147. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

148. On or about 11/10/25, Plaintiff received an updated credit file from EQ.

149. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to BMW.

150. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify BMW.

151. EQ failed to properly reinvestigate Plaintiff's dispute.

152. As a result of EQ's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

153. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

154. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

155. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

156. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

157. On or about 11/10/25, Plaintiff received an updated credit file from TU.

158. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to BMW.

159. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify BMW.

160. TU failed to properly reinvestigate Plaintiff's dispute.

161. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

162. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

163. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

164. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

165. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

166. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

167. The updated 11/10/25 credit report contained inaccurate information.

168. BMW failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

169. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

170. BMW must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

171. That BMW furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

172. That BMW failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by EXP, EQ, and TU.

173. In the alternative, if BMW properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

174. That BMW never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

175. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from BMW in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

176. That MBF was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

177. That MBF was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

178. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with MBF as disputed.

179. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

180. Plaintiff disputed the late payment reporting, asserting the account was never late and all payments were made on time.

181. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MBF.

182. EXP, EQ, and TU received the letters sent by Plaintiff.

183. EXP, EQ, and TU transmitted notice of these disputes to MBF via an Automated Credit Dispute Verification form ("ACDV").

184. MBF was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

185. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to MBF after receiving notice of the disputes from Plaintiff.

186. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to MBF after receiving notice of the disputes from Plaintiff.

187. After receiving this notice, in any subsequent voluntary reporting, MBF must then include the dispute notation on said account.

188. Defendant MBF re-reported the account to EXP and TU on 09/30/25.

189. Defendant MBF re-reported the account to EQ on 11/01/25.

190. On or about 11/10/25, Plaintiff received an updated credit file from EXP.

191. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to MBF.

192. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify MBF.

193. EXP failed to properly reinvestigate Plaintiff's dispute.

194. As a result of EXP's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

195. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

196. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

197. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

198. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

199. On or about 11/10/25, Plaintiff received an updated credit file from EQ.

200. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to MBF.

201. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify MBF.

202. EQ failed to properly reinvestigate Plaintiff's dispute.

203. As a result of EQ's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

204. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

205. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

206. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

207. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

208. On or about 11/10/25, Plaintiff received an updated credit file from TU.

209. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to MBF.

210. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify MBF.

211. TU failed to properly reinvestigate Plaintiff's dispute.

212. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

213. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

214. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

215. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

216. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

217. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

218. The updated 11/10/25 credit report contained inaccurate information.

219. MBF failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

220. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

221. MBF must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

222. That MBF furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

223. That MBF failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by EXP, EQ, and TU.

224. In the alternative, if MBF properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

225. That MBF never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

226. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MBF in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

227. That KFA was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

228. That KFA was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

229. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with KFA as disputed.

230. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

231. Plaintiff disputed the account, asserting no late payments occurred and the last payment dates are inconsistent across reports.

232. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case KFA.

233. EXP, EQ, and TU received the letters sent by Plaintiff.

234. EXP, EQ, and TU transmitted notice of these disputes to KFA via an Automated Credit Dispute Verification form ("ACDV").

235. KFA was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

236. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to KFA after receiving notice of the disputes from Plaintiff.

237. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to KFA after receiving notice of the disputes from Plaintiff.

238. After receiving this notice, in any subsequent voluntary reporting, UI must then include the dispute notation on said account.

239. Defendant KFA re-reported the account to EXP on 01/31/25.

240. Defendant KFA re-reported the account to EQ on 02/20/25.

241. On or about 11/10/25, Plaintiff received an updated credit file from EXP.

242. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to KFA.

243. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify KFA.

244. EXP failed to properly reinvestigate Plaintiff's dispute.

245. As a result of EXP's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

246. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

247. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

248. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

249. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

250. On or about 11/10/25, Plaintiff received an updated credit file from EQ.

251. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to KFA.

252. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify KFA.

253. EQ failed to properly reinvestigate Plaintiff's dispute.

254. As a result of EQ's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

255. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

256. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

257. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

258. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

259. On or about 11/10/25, Plaintiff received an updated credit file from TU.

260. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to KFA.

261. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify KFA.

262. TU failed to properly reinvestigate Plaintiff's dispute.

263. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

264. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

265. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

266. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

267. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

268. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

269. The updated 11/10/25 credit report contained inaccurate information.

270. KFA failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

271. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

272. KFA must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

273. That KFA furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

274. That KFA failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by EXP, EQ, and TU.

275. In the alternative, if KFA properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

276. That KFA never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

277. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from KFA in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

278. That JPMCB was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

279. That JPMCB was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

280. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with JPMCB as disputed.

281. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

282. Plaintiff disputed the late payment reporting, asserting the account was paid on time.

283. Plaintiff requested correction to "paid as agreed," documentation proving any alleged late payment, or removal of the late remark if no proof exists.

284. The three credit reporting agencies were not uniformly reporting the same information for the JPMCB account.

285. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case JPMCB.

286. EXP, EQ, and TU received the letters sent by Plaintiff.

287. EXP, EQ, and TU transmitted notice of these disputes to JPMCB via an Automated Credit Dispute Verification form ("ACDV").

288. JPMCB was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

289. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to JPMCB after receiving notice of the disputes from Plaintiff.

290. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to JPMCB after receiving notice of the disputes from Plaintiff.

291. After receiving this notice, in any subsequent voluntary reporting, JPMCB must then include the dispute notation on said account.

292. Defendant JPMCB re-reported the account to EXP and TU on 07/31/24.

293. Defendant JPMCB re-reported the account to EQ on 09/01/25.

294. On or about 11/10/25, Plaintiff received an updated credit file from EQ.

295. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to JPMCB.

296. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify JPMCB.

297. EQ failed to properly reinvestigate Plaintiff's dispute.

298. As a result of EQ's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

299. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

300. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

301. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

302. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

303. On or about 11/10/25, Plaintiff received an updated credit file from EXP.

304. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to JPMCB.

305. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify JPMCB.

306. EXP failed to properly reinvestigate Plaintiff's dispute.

307. As a result of EXP's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

308. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

309. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

310. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

311. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

312. On or about 11/10/25, Plaintiff received an updated credit file from TU.

313. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to JPMCB.

314. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify JPMCB.

315. TU failed to properly reinvestigate Plaintiff's dispute.

316. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

317. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

318. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

319. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

320. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

321. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

322. The updated 11/10/25 credit report contained inaccurate information.

323. JPMCB failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

324. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

325. JPMCB must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

326. That JPMCB furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

327. That JPMCB failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by EXP, EQ, and TU.

328. In the alternative, if JPMCB properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

329. That JPMCB never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

330. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from JPMCB in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

331. That Uplift was reporting the account on Plaintiff's credit report with EQ and TU.

332. That Uplift was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

333. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to EQ and TU notifying the account with Uplift as disputed.

334. These letters provided notice of the inaccurate reporting to EQ and TU.

335. Plaintiff disputed the reported delinquent status, asserting all payments were made on time, and requested removal of the inaccurate late payment remarks.

336. The two credit reporting agencies were not uniformly reporting the same information for the Uplift account.

337. Once EQ and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case Uplift.

338. EQ and TU received the letters sent by Plaintiff.

339. EQ and TU transmitted notice of these disputes to Uplift via an Automated Credit Dispute Verification form ("ACDV").

340. Uplift was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

341. Alternatively, EQ and TU negligently failed to send notice of the disputes to JPMCB after receiving notice of the disputes from Plaintiff.

342. Alternatively, EQ and TU willfully failed to send notice of the disputes to Uplift after receiving notice of the disputes from Plaintiff.

343. After receiving this notice, in any subsequent voluntary reporting, Uplift must then include the dispute notation on said account.

344. Defendant Uplift re-reported the account to TU on 09/16/25.

345. Defendant Uplift re-reported the account to EQ on 09/01/25.

346. On or about 11/10/25, Plaintiff received an updated credit file from EQ.

347. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to Uplift.

348. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify Uplift.

349. EQ failed to properly reinvestigate Plaintiff's dispute.

350. As a result of EQ's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

351. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

352. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

353. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

354. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

355. On or about 11/10/25, Plaintiff received an updated credit file from TU.

356. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to Uplift.

357. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify Uplift.

358. TU failed to properly reinvestigate Plaintiff's dispute.

359. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

360. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

361. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

362. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

363. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

364. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

365. The updated 11/10/25 credit report contained inaccurate information.

366. Uplift failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

367. EQ and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

368. Uplift must have voluntarily updated the Plaintiff's alleged account by communicating with EQ and TU.

369. That Uplift furnished information to EQ and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ and TU of the disputes.

370. That Uplift failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by EQ and TU.

371. In the alternative, if Uplift properly updated the account information and marked the account as disputed with EQ and TU after receiving notification of disputes from Plaintiff, then EQ and TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

372. That Uplift never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ and TU.

373. Alternatively, EQ and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from Uplift in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

374. That BH was reporting the account on Plaintiff's credit report with TU.

375. That BH was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

376. On or about 09/11/25, Plaintiff sent dispute letters via USPS mail to TU notifying the account with BH as disputed.

377. These letters provided notice of the inaccurate reporting to TU.

378. Plaintiff disputed the collection account, asserting it does not belong to them, is unrecognized, and is incompletely reported. Plaintiff requested removal from the credit report.

379. Once TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case BH.

380. TU received the letters sent by Plaintiff.

381. TU transmitted notice of these disputes to BH via an Automated Credit Dispute Verification form ("ACDV").

382. BH was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

383. Alternatively, TU negligently failed to send notice of the disputes to JPMCB after receiving notice of the disputes from Plaintiff.

384. Alternatively, TU willfully failed to send notice of the disputes to BH after receiving notice of the disputes from Plaintiff.

385. After receiving this notice, in any subsequent voluntary reporting, BH must then include the dispute notation on said account.

386. Defendant BH re-reported the account to TU on 09/22/21.

387. On or about 11/10/25, Plaintiff received an updated credit file from TU.

388. That the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to BH.

389. Alternatively, that the updated 11/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify BH.

390. TU failed to properly reinvestigate Plaintiff's dispute.

391. As a result of TU's failure to reinvestigate, the updated 11/10/25 credit report contained inaccurate information.

392. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

393. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

394. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

395. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

396. That the updated 11/10/25 credit report did not contain updated marked as disputed information.

397. The updated 11/10/25 credit report contained inaccurate information.

398. BH failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

399. TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

400. BH must have voluntarily updated the Plaintiff's alleged account by communicating with TU.

401. That BH furnished information to TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

402. That BH failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report after Plaintiff disputed the account on 09/11/25 and was given notice of such by TU.

403. In the alternative, if BH properly updated the account information and marked the account as disputed with TU after receiving notification of disputes from Plaintiff, then TU failed to update the account information and mark the account as disputed on the updated 11/10/25 credit report.

404. That BH never properly updated the account information or marked the account as disputed even after receiving information of the disputes from TU.

405. Alternatively, TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from BH in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

406. All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

407. The CRA Defendants' failure to report the Account correctly and failure to report the accurate status and accurate balance harmed Plaintiff's credit score and would, at least, mislead a third-party reviewing Plaintiff's credit history.

408. If the Furnishers had complied with their duties to reinvestigate the accounts when they received notice of the disputes, they would have conducted reasonable investigations and updated the information they were furnishing accordingly.

409. If the CRA Defendants would have complied with their statutory duties, inaccurate information concerning the accounts would not have been reported despite notice from Plaintiff.

410. Further, after receiving Plaintiff's disputes concerning the inaccurate information of the accounts, EXP, EQ, and TU are required to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit file(s) it published and maintained concerning Plaintiff.

411. Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive Practices of the BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift, and/or EXP, EQ, and TU.

412. Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift, and/or EXP, EQ, and TU.

413. Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift, and/or EXP, EQ, and TU.

414. Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

415. Plaintiff's injury-in-fact is fairly traceable to the challenged representations of BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift, and/or EXP, EQ, and TU.

416. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

417. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

418. Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with EXP, EQ, and TU.

419. EXP, EQ, and TU failed to follow reasonable procedures to keep Plaintiff's credit file accurate by including incomplete information on Plaintiff's credit file; EXP, EQ, and TU failed to send notice of the disputes received from Plaintiff to the furnishers as required, and EXP, EQ, and TU failed to update Plaintiff's credit file to ensure accuracy; EXP, EQ, and TU violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

420. As a result of this conduct, action and inaction of EXP, EQ, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

421. EXP, EQ, and TU's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

422. Due to EXP, EQ, and TU's conduct, Plaintiff is entitled to recovery costs and attorney's fees from EXP, EQ, and TU in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dustin Tappan, Prays that this Court:

A. Declare that EXP, EQ, and TU's credit reporting actions violate the FCRA;

B. For EXP, EQ, and TU's willful violations, enter judMBFent in favor of Plaintiff Dustin Tappan, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C. For EXP, EQ, and TU's negligent violations, enter judMBFent in favor of Plaintiff Dustin Tappan, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D. Or, in the alternative, enter judMBFent in favor of Plaintiff Dustin Tappan, and against EXP, EQ, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E. Grant other such further relief as deemed just and proper.

**Count II: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information**

423. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

424. EXP, EQ, and TU were reporting inaccurate and incomplete information on Plaintiff's credit report.

425. EXP, EQ, and TU's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

426. Plaintiff disputed the accuracy of his credit report directly with EXP, EQ, and TU via dispute letters sent through USPS.

427. Defendants EXP, EQ, and TU violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

428. EXP, EQ, and TU failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

429. Defendants EXP, EQ, and TU willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to BC, AEC, BMW, MBF, KFA, JPMCB, BH, and Uplift; by failing to maintain reasonable procedures with which to filter and verify disputed information in the

Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

430. As a result of this conduct, action and inaction of EXP, EQ, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

431. EXP, EQ, and TU's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

432. The Plaintiff is entitled to recovery costs and attorney's fees from EXP, EQ, and TU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dustin Tappan prays that this Court:

A. Declare that EXP, EQ, and TU's credit reporting actions violate the FCRA;

B. Enter judMBFent in favor of Plaintiff Dustin Tappan, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C. Or, in the alternative, enter judMBFent in favor of Plaintiff Dustin Tappan, and against EXP, EQ, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D. Grant other such further relief as deemed just and proper.

## JURY DEMAND

433. Plaintiff demands a trial by jury on all Counts so triable.

Dated: November 10, 2026

Respectfully Submitted,

**HALVORSEN KLOTE DAVIS**

By: /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
Seid Music, #76713
680 Craig Road, Suite 104
St. Louis, MO 63141
P: (314) 451-1314
F: (314) 787-4323
joel@hkdlawstl.com
seid@hkdlawstl.com
*Attorneys for Plaintiff*